831 So.2d 1284 (2002)
Dale J. SCHRIEFER, Appellant,
v.
Robert J. SCHRIEFER, Appellee.
No. 5D02-676.
District Court of Appeal of Florida, Fifth District.
December 20, 2002.
*1285 Charles P. Vaughn, Inverness, for Appellant.
No Appearance for Appellee.
Prior report: 800 So.2d 699.
SHARP, W., J.
Dale Schriefer (the former wife) appeals from an Amended Final Judgment of Dissolution.[1] She argues that the trial court erred in making an unequal distribution of the parties' marital assets, in part because she removed all of the parties' marital funds from a joint account. We find no error with the court's distribution and affirm.
This was a short-term marriage of only two years, and alimony was not at issue. There were only three substantial issues relating to the parties' assets. One involved the wife's removal of $16,000 to $18,000 from the parties' joint account, and her subsequent purchase of a residence in Deltona. The second issue was whether the former wife had a special equity in the marital residence, which the parties built on land purchased by the former husband prior to their marriage. The third issue concerned the value of the furniture and household items, which the wife removed from the marital residence during the former husband's absence. The parties presented disputed testimony concerning these issues, and the Amended Final Judgment found that the wife's testimony was not "candid," and that this "tainted her credibility" with the court.
In the Amended Final Judgment the court found that the wife had "wrongfully appropriated" the marital funds she removed from the parties' joint account in January of 1999, when she decided the marriage was over. The husband was unaware of the removal of the funds, as well as the former wife's decision to leave him. He learned of the wife's withdrawals when he attempted to withdraw funds from the joint account and discovered it was closed.
The wife admitted she withdrew the funds, but claimed that between January 1, 1999 and March 25, 1999, she used them all, as well as all of her social security payments, for living expenses. She explained that at first, she wanted to return to Massachusetts, and she needed money to move. Later she decided to stay in Florida and spent the money on living expenses. However, the wife conceded that in February of 1999 she vacationed in Key West with a friend, and that she moved into her Deltona home on April 8, 1999 with the same friend. The evidence *1286 showed that she moved most of the marital furniture to her Deltona residence.
To substantiate her claim for a special equity in the marital residence, the wife testified that before the parties were married she deposited $35,000 (a pre-marriage lump-sum settlement she received for a work-related injury) into an account belonging to the husband, and that this amount was used to build the marital residence. She also testified the husband had agreed to return this sum to her. However, the husband testified the $35,000 transfer to him was in repayment of a loan he had made to her. The court found that the wife did not prove a special equity in the marital residence. § 61.075(5), Fla. Stat. See Archer v. Archer, 712 So.2d 1198 (Fla. 5th DCA 1998).
The court averaged the parties' estimates of the value of the household furniture at $14,250. The husband based his estimate of value on one made by the wife in her amended financial affidavit. Her original financial affidavit valued the furniture at $17,000, and a week later, she filed an amended financial affidavit which valued the furniture at $20,000-$25,000. At trial, she testified the furniture was worth only $7,000-$7,500. We find no error in valuations, since they were based on the former wife's affidavits.
The court determined that the equity in the marital residence was $64,700 and awarded the wife approximately one-half of that amount: $16,000 (withdrawn joint funds) and $14,250 (furniture evaluation), totaling $30,250. It awarded the marital residence to the husband, pursuant to § 61.075(1)(i), and (j),[2] expressly finding that to require the husband to sell his only home and split the funds with the wife would be "patently inequitable."
It appears that the court miscalculated the marital estate by limiting it to $64,700, the equity in the marital residence. The marital estate included assets totaling $94,950-96,950; the equity in the marital residence, the joint funds appropriated by the former wife, and the furniture. This error, however, is harmless. The wife testified that a MasterCard in both parties' names and used by her during the marriage, had a balance due of $27,434.03. The husband had assumed this marital debt by closing the account and transferring it into an individual account in his name. The net marital estate was therefore $67,515. A 50-50 split, which is the starting point for equitable distribution of marital assets,[3] would result in a distribution of $33,758 to each party. In this case, the wife received $30,250-$32,250.
We have reviewed the record and find no reversible error in the court's equitable distribution of the parties' marital assets. The court obviously accepted the former husband's version of the disputed facts in making its findings, as it has a right to do as the factfinder. So long as there is substantial competent evidence to support the trial court's finding, the appellate court cannot act as a new fact finder and reverse. Shaw v. Shaw, 334 So.2d 13, 16 *1287 (Fla.1976); Dean v. Dean, 793 So.2d 1121 (Fla. 5th DCA 2001); Terrell v. Terrell, 344 So.2d 891 (Fla. 4th DCA 1977).
Regarding equitable distribution of marital assets, a trial court may be reversed only if we conclude it has abused its discretion,[4] or if it failed to follow a required legal principle. Neither occurred in this case.
AFFIRMED.
HARRIS and ORFINGER, JJ., concur.
NOTES
[1] The former husband, Robert Schriefer, has not appeared in this appeal.
[2] These sections permit an unequal distribution upon intentional dissipation, waste, depletion or destruction of marital assets after the petition is filed or within two years prior to filing the petition, section 61.075(1)(i); and any other factors necessary to do equity and justice between the parties, section 61.075(1)(j). Although the trial court found a lack of candor on the part of the wife, it did not base its distribution scheme on this factor, as it is not one of the justifications for an unequal distribution in section 61.075(1). See also Ruiz v. Ruiz, 821 So.2d 1112 (Fla. 3d DCA 2002).
[3] § 61.075(1), Fla. Stat. (1999). See Ingle v. Ingle, 640 So.2d 223, 224 (Fla. 5th DCA 1994); Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981).
[4] Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980)