849 So.2d 1204 (2003)
Kim L. BUCKNAM, f/k/a Kim L. Shelton, Appellant,
v.
Leonard C. SHELTON, Appellee.
No. 5D02-107.
District Court of Appeal of Florida, Fifth District.
July 25, 2003.
*1205 Kenneth D. Morse and Heather Morcroft of Kenneth D. Morse, P.A., Orlando, for Appellant.
Robert J. Wheelock, Orlando, for Appellee.
THOMPSON, J.
Kim Leslie Bucknam ("former wife") appeals the final judgment of dissolution of marriage. We agree that the court abused its discretion in determining the alimony award and reverse.
For most of this long term marriage, the former wife was a homemaker. She had worked part time at jobs that entailed little skill and minimal pay, while the former husband earned a master's degree during the marriage and was an engineer at Lockheed Martin. After the petition for dissolution was filed, the parties stipulated that the former husband would remain in the marital home and have primary residential responsibility for the parties' two children. The older of the children reached her majority before entry of the final judgment, and the younger child reached his majority a few months after the final judgment was rendered.
The former wife was taking medication for a mental illness and had physical disabilities. She thought her mental illness was the ultimate cause of her children's estrangement from her. Her testimony that the mental illness prevented her from working full time was supported by her expert's testimony, but the court credited the testimony of the former husband's expert, who said the former wife was doing well on the medication and that nothing prevented her from working full time.
The parties' major assets consisted of 401K plans, the marital home in Orlando, and a house in Cleveland that had been a marital home, with a total value of approximately $250,000. The court split the parties' assets equally and ordered the former husband to pay the former wife $1,000 per month in permanent alimony. The court imputed to the former wife a 40-hour week of wages calculated at the rate paid by a Publix supermarket in Orlando, where the former wife worked when the petition was filed, rather than the dollar or so less per hour she was earning at a Wal-Mart in Virginia, where she was working when the trial ended. In contrast to the former wife, whose earnings were at or near the *1206 minimum wage, the former husband earned $90,000 or more per year.
In its initial ruling, the court stated "[t]he need for alimony is the Former Wife's apparent disability." This was an incorrect premise upon which to base the alimony award. Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980). Permanent alimony is appropriate where the income of the spouse seeking alimony cannot support that spouse in accordance with the life-style established during the marriage. Webb v. Webb, 659 So.2d 336, 337 (Fla. 1st DCA 1995). The trial court need not equalize the financial position of the parties, but the trial court must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be shortchanged. Canakaris, 382 So.2d at 1204. In the instant case, the wife's need for alimony derives not only from her disorders but from her inability to support herself "in accordance with the life-style established during the marriage." Webb, 659 So.2d at 337.
"It is the exceptional case when a couple's resources and earnings prove sufficient to maintain two independent households in the same manner as the original household," Pirino v. Pirino, 549 So.2d 219, 220 (Fla. 5th DCA 1989), but the award in the instant case shortchanges the former wife. In Winn v. Winn, 669 So.2d 1155 (Fla. 5th DCA 1996), the wife, who had a high school diploma, earned $7.00 an hour as a clerical worker. The husband, who was a Navy pilot with a Masters degree, had a net monthly income of $4,425, while the wife's net monthly income was $1,330. The trial court found that the parties' standard of living during this marriage had been upper middle class. After the dissolution, the court found the husband's standard of living would be mid-middle class and the wife's lower-middle class, unless she were awarded permanent periodic alimony. As in the instant case, the husband stipulated that the wife was entitled to permanent alimony, but the court awarded only $350 per month. We held that the $350 per month alimony was "woefully inadequate" and an abuse of discretion. See also Thrift v. Thrift, 632 So.2d 202 (Fla. 1st DCA 1994) (reversing as inadequate alimony award of $300 per month where it was unlikely wife would ever earn more than a net of $675 per month, and where the husband earned a net of $2,150 monthly); Atkins v. Atkins, 611 So.2d 570 (Fla. 1st DCA 1992) (reversing as inadequate alimony award of $750 per month where husband's net monthly income was $7,668 and wife's was $1,050 per month); Wright v. Wright, 577 So.2d 1355 (Fla. 1st DCA 1991) (reversing as inadequate alimony award of $2,000 per month where wife was capable of earning $10,000 to $12,000 annually and where husband's after-tax income was between $132,000 and $143,000 per year).
We do not agree with the former wife that the former husband should be required to provide her health insurance. Compare Spangler v. Spangler, 470 So.2d 732 (Fla. 5th DCA 1985). Further, the issue of visitation is moot. See WFTV, Inc. v. Robbins, 625 So.2d 941 (Fla. 4th DCA 1993) (holding that mootness occurs when the issues presented are no longer alive or when the parties lack a legally cognizable interest in the outcome). We do not disturb the trial court's finding that the former wife was able to work full time because there was substantial competent evidence to support the finding. See *1207 Schriefer v. Schriefer, 831 So.2d 1284, 1286-87 (Fla. 5th DCA 2002).
Accordingly, we reverse the final judgment, except that portion dissolving the marriage, and the cause is remanded for further consideration. Because the distribution of marital assets was conditioned on the selling price of the house in Ohio, testimony regarding the status of the house may be taken. Compare Winn. Furthermore, additional testimony may be taken regarding the value of the home furnishings retained by each party, so that those values can be allocated as part of the distribution of marital assets. See Schriefer, 831 So.2d at 1286 (marital estate includes home furnishings). The order on remand should be specific about the parties' gross incomes and the derivation of their net incomes.
REVERSED.
PETERSON and PALMER, JJ., concur.